UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                         :
EDWARD ABREU,                            :
                                         :
                        Petitioner,      :      20cr52-2 (DLC)
                                         :      21cv10122 (DLC)
             -v-                         :
                                         :      OPINION AND
UNITED STATES OF AMERICA,                :           ORDER
                                         :
                        Respondent.      :
                                         :
--------------------------------------- X

APPEARANCES:

For petitioner Edward Abreu:
Andrew H. Freifeld
Andrew Freifeld, Esq.
P.O. Box 3196
New York, NY 10008

For the United States of America:
Thomas John Wright
U.S. Attorney's Office for the Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

    Petitioner Edward Abreu ("Abreu") has petitioned for a writ

of habeas corpus pursuant to Title 28, United States Code,

Section 2255, on the basis of ineffective assistance of counsel.

An Order of August 29 invited briefing on the question whether

Abreu's trial counsel failed to consult with him adequately

regarding his right to appeal.  For the following reasons,

Abreu's petition is denied.

## Background

This Opinion addresses Abreu's petition to the extent it asserted that his trial counsel failed to consult with him adequately regarding his right to appeal. Familiarity with the prior Opinions in this matter is assumed. This Opinion summarizes only those facts relevant to the question presented by the parties' latest round of briefing.

I.   Abreu's Plea Agreement and Sentencing

Abreu was arrested on February 15, 2020, and he retained Cohen, Frankel & Ruggiero, LLP as his defense counsel. Mark Cohen and Peter Frankel subsequently represented Abreu through his sentencing. On March 5, Abreu was indicted on a single count of participating in a conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base, otherwise known as crack. The charge carried a mandatory minimum ten-year term of incarceration pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846, among other penalties. In the following months, defense counsel negotiated with the Government an agreement pursuant to which Abreu would plead guilty to a lesser included offense with a mandatory minimum sentence of five years' imprisonment (the "Agreement"). Over the course of several conversations with defense counsel, Abreu indicated he knew he was in serious legal danger, he would be satisfied with

a sentence of ten years' imprisonment, and that he appreciated his attorneys' efforts and success in negotiating the Agreement.

Over the course of five meetings in November of 2020 and January, March, and April of 2021, Abreu's counsel reviewed the Agreement with him in depth. His attorneys advised him that his Guidelines range would be 97 to 121 months' imprisonment, and that he would be waiving his right to challenge his term of incarceration, his term of supervised release, and the amount of a fine, as long as a higher sentence was not imposed. His attorneys also advised Abreu of his "residual" appellate rights, specifically his right to appeal his sentence based upon any post-sentencing decision by him that his defense counsel's work on his behalf had been ineffective.

In a hearing held via videoconference on April 14, 2021, Abreu pleaded guilty to conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B), which carried a mandatory minimum term of imprisonment of five years. Abreu acknowledged under oath that he had actually committed this crime, that he was voluntarily pleading guilty, and that he understood his sentence would be binding even if it reflected a different calculation of the Sentencing Guidelines than the one in the Agreement. Abreu further stated he had carefully read the Agreement, that he had discussed it with his attorneys, that

he believed he understood it well, and that he had authorized his attorneys to sign it.

In addition to stipulating to a range of 97 to 121 months' imprisonment, Abreu agreed not to "file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 97 to 121 months' imprisonment." He also agreed "not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum." The Agreement then stated that "nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights."

On July 30, 2021, Abreu was sentenced to 120 months' imprisonment, followed by four years of supervised release with conditions. Included in his conditions of supervised release were five "special conditions": (a) Abreu would be required to submit his person and property to search, in cases of "reasonable suspicion" of violation of his terms of supervised release or unlawful conduct; (b) he was to participate in an

4

outpatient drug treatment program; (c) he would be required to "seek and maintain full-time employment"; (d) he would need to provide the Probation Department any requested financial information; and (e) he would be supervised by his district of residence.

During his sentencing, the Court advised Abreu of his right to appeal, that any notice of appeal must be filed within 14 days of the judgment, and that he could request leave to appeal in forma pauperis. Abreu did not direct his attorneys to file a notice of appeal, he did not file a notice of appeal, and he did not request leave to appeal in forma pauperis.

## II. Abreu's § 2255 Petition

On November 29, 2021, Abreu filed a pro se petition for a writ of habeas corpus pursuant to § 2255. He argued that his trial counsel provided ineffective assistance, by telling him he could not appeal and by failing to challenge this Court's jurisdiction. Abreu's petition was denied in an Opinion and Order of December 13. Abreu v. United States, 21cv10122 (DLC), 2021 WL 5909634 (S.D.N.Y. Dec. 13, 2021)("December 2021 Opinion"). Abreu appealed that denial to the Second Circuit Court of Appeals.

On October 12, 2023, the Second Circuit vacated the December 2021 Opinion. Abreu v. United States, No. 22-13, 2023

WL 6632951, at *3 (2d Cir. Oct. 12, 2023).  It held that if
Abreu's counsel had erroneously advised him that he had no right
to appeal, Abreu would be eligible for relief under § 2255 if
the Government could not show by clear and convincing evidence
that Abreu had independent knowledge of his right to appeal and
elected not to exercise it.  And the Second Circuit found that
the record did not "conclusively establish that Abreu was
independently aware of his right to appeal."  Id. at *3.  The
Second Circuit's mandate issued on December 4, 2024, and new
counsel was appointed for Abreu on January 5, 2024.

Following additional briefing, which included an affidavit
from Abreu's trial counsel, an Opinion of August 29, 2024
concluded that the Government had shown, by clear and convincing
evidence, that Abreu's trial counsel did not tell Abreu that he
had no right to appeal.  Abreu v. United States, 21cv10122
(DLC), 2024 WL 4007823 (S.D.N.Y. Aug. 29, 2024).  Because a
submission by Abreu's appointed counsel appeared to raise a
different issue from that Abreu asserted in his 2021 petition,
an Order of the same day scheduled briefing on this separate
question: whether Abreu's trial counsel failed to consult with
him adequately regarding his right to appeal.  Briefing on that
question was fully submitted on October 14.

## **Discussion**

Abreu's pro se petition argued that his counsel advised him that he had no right to appeal.  Abreu has since been appointed counsel, who has developed a distinct argument about the adequacy of Abreu's trial counsel's consultation with him regarding his appeal rights.  A new argument raised years after Abreu's filing of his petition would normally be considered waived.  But because Abreu's petition was filed pro se, it is construed "as broadly as possible."  Ruiz-Martinez v. Mukasey, 516 F.3d 102, 121 (2d Cir. 2008).  Thus, Abreu's petition is treated as if it originally contained his counsel's argument regarding inadequate consultation by his trial counsel.

A successful claim of ineffective assistance of counsel "must show that the counsel's performance was (a) 'deficient' according to 'an objective standard of reasonableness,' and (b) 'prejudicial,' meaning a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Thomas v. United States, 93 F.4th 62, 65 (2d Cir. 2024) (quoting Strickland v. Washington, 466 U.S. 668, 687-88, 692-94 (1984)).[1]

---

[1]  A petitioner is presumed to have made such a showing when "his attorney mistakenly advises him that there is no right to appeal," Thomas, 93 F.4th at 66, but, as discussed in the Opinion of August 29, that did not happen here.  The same is true where a petitioner tells counsel he wanted to appeal but

With respect to the first of Strickland's prongs,

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). Abreu does not claim that he demonstrated to counsel he wanted to appeal, so the second scenario is not at issue. The petition thus hinges on whether a rational defendant would want to appeal Abreu's sentence. That question must be answered in light of the "strong[] presum[ption] that counsel made all significant decisions in the exercise of reasonable professional judgment." United States v. Rosemond, 958 F.3d 111, 121 (2d Cir. 2020) (citation omitted). And a nondeterminative but "highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480.

---

his counsel fails to file a notice of appeal. Garza v. Idaho, 586 U.S. 232, 242-43 (2019). That did not happen here either.

A.    Grounds for Appeal

In support of his petition, Abreu identifies two grounds on which he claims he could have appealed: "the court's acceptance of Abreu's guilty plea," and "the propriety" of the conditions of supervised release imposed by the Court at sentencing. Neither amounts to a nonfrivolous ground for appeal, or a reason for a rational defendant to want to appeal. As a result, his trial counsel did not have a constitutionally imposed duty to consult with him about an appeal, and Abreu's counsel's performance was not deficient.

1.    Acceptance of the Guilty Plea

Abreu first contends that he could have argued on appeal that the Court violated Rule 11 when he entered his plea. He argues that the Court was required by Rule 11 to question him during his plea allocution to ensure that he understood that by entering into the Agreement with the Government he was waiving his right to appeal any sentence of 121 months' incarceration or less. See Rule 11(b)(1)(N), Fed. R. Crim. P. While the Court typically engages in such an inquiry, it did not do so here.

This argument would not have been a nonfrivolous ground for appeal. A successful appeal based on a deficiency in a Rule 11 colloquy requires showing not only that there was a plain error, but also that "the error prejudicially affected [the

defendant's] substantial rights" and "the error seriously affected the fairness, integrity or public reputation of judicial proceedings." United States v. Pattee, 820 F.3d 496, 505 (2d Cir. 2016) (citation omitted); see also Fed. R. Crim. P. 11(h). "In order to establish that a Rule 11 violation affected 'substantial rights,' the defendant must show 'that there is a reasonable probability that, but for the error, he would not have entered the plea.'" Pattee, 820 F.3d at 505 (citation omitted).

Abreu does not contend that, if not for the omission of specific reference to his appeal waiver in the Court's acceptance of his plea, he would not have entered his plea. His trial counsel reviewed each paragraph of the Agreement with him and repeatedly discussed the waiver. At the April 14, 2021 plea allocution, Abreu said under oath that he had read the Agreement with care, that he had discussed it with his attorney, and that he believed he had a good understanding of it. Having claimed in his initial petition that his counsel told him he had no right to appeal at all, Abreu now says he does not recall what his trial counsel said specifically about his residual appeal rights. There is, however, no dispute that the conversation (indeed, multiple conversations) about the Agreement and appeal waiver took place.

Nothing in the record suggests that Abreu's decision to plead guilty was anything other than a "voluntary and intelligent choice" or that his substantial rights were at all affected by the omission during the plea colloquy of a specific reference to the Agreement's appeal waiver. <u>Pattee</u>, 820 F.3d at 503 (citation omitted). Abreu had told his trial counsel that he would be satisfied with a sentence of ten years, which was the sentence he received. Counsel had no duty to consult further with Abreu regarding an appeal of that sentence.

2. Conditions of Supervised Release

Abreu has also argued that his counsel was ineffective in failing to consult with him regarding an appeal addressed to the special conditions of supervised release imposed at his sentence. The Agreement's appeal waiver did not cover the conditions of supervised release specified at his sentencing. But his conditions of supervised release did not establish a nonfrivolous ground for appeal either. Abreu's special conditions of supervision fell well within the broad discretion of the sentencing court.

"From the beginning of the Republic, federal judges were entrusted with wide sentencing discretion" -- a "'long' and 'durable' tradition" that continues to this day. <u>Concepcion v. United States</u>, 597 U.S. 481, 490-91 (2022) (citation omitted).

11

"A federal judge in deciding to impose a sentence 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'"  Id. at 492 (citation omitted).

The conditions of supervised release make no exception to this principle.  Supervised release "permits a defendant a kind of conditional liberty."  Mont v. United States, 587 U.S. 514, 523 (2019) (citation omitted).  Its purpose, as distinct from incarceration's, is to "assist individuals in their transition to community life."  United States v. Freeman, 99 F.4th 125, 128 (2d Cir. 2024) (quoting United States v. Johnson, 529 U.S. 53, 59 (2000)).  "In imposing conditions of supervised release, district courts possess broad discretion."  United States v. Oliveras, 96 F.4th 298, 313 (2024).  Indeed, courts have been "given broad latitude to design their own 'special conditions'" of supervised release.  United States v. Sims, 92 F.4th 115, 120 (2d Cir. 2024).

Section 3583 of Title 18 requires courts to consider the factors set forth in § 3553(a) when determining the conditions of supervised release.  18 U.S.C. § 3583(c).  Those factors include consideration of the defendant's personal history, protection of the public from further crimes by the defendant,

and how to provide the defendant with adequate deterrence to future criminal conduct and needed training or treatment. Id. § 3553(a). Section 3583 requires courts to impose certain conditions of release. Id. § 3583(d). It also allows court to order further conditions of supervised release where reasonably related to the factors set out in § 3553(a), so long as they are 'consistent with any pertinent policy statements issued by the Sentencing Commission," and involve no greater deprivation of liberty than is reasonable necessary to achieve the purposes set forth in those provisions of § 3553(a) that are addressed to deterrence, protection of the public, and needed training and treatment. Id. § 3583(d).

The U.S. Sentencing Commission's Guidelines Manual also provides sentencing judges with wide latitude with respect to conditions of supervised release, consistent with the statutory framework at 18 U.S.C. § 3583. See U.S.S.G. § 5D1.3. The Manual sets forth 13 standard conditions that are "recommended," 8 special conditions that may "be appropriate in particular cases," and 6 additional conditions that likewise "may be appropriate on a case-by-case basis." Id. § 5D1.3(c)-(e). And a special condition of release crafted by a court need not be "reasonably related" to each of the § 3553(a) factors; rather, "a condition may be imposed if it is reasonably related to any

one or more of the specified factors." Oliveras, 96 F.4th at 314 (citation omitted).

In the Second Circuit, the district courts' broad discretion to impose conditions of supervised release persists even as the Court of Appeals has increased its attention to this topic. Supervised release conditions are reviewed for abuse of discretion. Id. at 304. In terms of their substance, district courts' "broad discretion" allows them to impose any condition that "is reasonably related to any one or more of the specified factors," although the Circuit "will carefully scrutinize unusual and severe conditions." Id. at 313-14 (citation omitted). And in terms of procedural reasonableness, the district court need only "make an individualized assessment" and "state on the record the reasoning for imposing" the sentence to the extent the reasoning is not "self-evident in the record." Id. at 313 (citation omitted).

The broad discretion over supervision continues after a term of supervised release begins. The sentencing court has wide discretion to modify a term of supervision, including by terminating it, extending it, or revoking it such that the defendant must return to prison. 18 U.S.C. § 3583(e). The court can also "modify, reduce, or enlarge the conditions of

supervised release" at any time before the term of supervision
terminates or expires.  Id. § 3583(e)(2).

A person on supervised release is overseen by a federal
probation officer, 18 U.S.C. § 3601, whose "mission is to
execute the sentence, control risk, and promote law-abiding
behavior."  United States v. Reyes, 283 F.3d 446, 456 (2d Cir.
2002) (emphasis omitted) (citation omitted).  The officer
instructs the supervisee about the conditions of their
supervised release, formulates a plan for supervision, conducts
formal evaluations of the supervisee's progress at regular
intervals, and intervenes where appropriate to address
supervision issues.  Id. at 456-57; see also 18 U.S.C. § 3603.
Upon learning of any issues, the officer may address them with
the supervisee, initiate revocation proceedings, or bring them
to the sentencing court's attention, including by seeking to
modify conditions of supervision.  Reyes, 283 F.3d at 457; see
also U.S.S.G. § 7B1.2 (policy statement advising officers to
promptly report certain violations to the court).  A probation
officer can even arrest a supervisee, with or without a warrant,
upon finding probable cause that the conditions of supervised
release have been violated.  Reyes, 283 F.3d at 457 (citing 18
U.S.C. § 3606).

Suffice it to say that if Abreu wanted to appeal his conditions of supervised release -- and there is no evidence he did -- he would have faced a high bar.  Abreu has suggested two bases for challenges he argues he could have made to his conditions of supervised release: First, Abreu argues that the Court did not explain its reasoning for imposing special conditions.  Second, he claims there is a conflict between the standard condition that required him to "work full time (at least 30 hours per week)" and the special condition that required him to "seek and maintain full-time employment." Neither would have provided a basis for Abreu to mount a nonfrivolous challenge to the imposed conditions.

    i.    Individualized Assessment

 "[A] District Court must 'make an individualized assessment when determining whether to impose a special condition of supervised release, and state on the record the reason for imposing it." Sims, 92 F.4th at 123 (citation omitted).  But the reason need not be stated if it is "self-evident in the record." Id. at 124 (citation omitted).

The record at sentencing included a Pre-Sentence Report ("PSR") and the parties' sentencing submissions.  The defendant's submission of July 16, 2021, included a letter from A&C Auto Inc. indicating that Abreu had "a full-time position"

16

available to him upon his release from custody.  His counsel's submission discussed, _inter alia_, the defendant's history of drug abuse and his employment history.  It noted the letter from A&C and its offer of full-time employment.  The Government's letter of July 26 described the defendant's criminal conduct and criminal history record, among other things.

At Abreu's sentencing, the Court stated the reasons for a "very substantial sentence," including Abreu's role in criminal activity, his recidivism, the sophistication and intensity of Abreu's criminal conduct, and his role relative to other defendants.  Together with the record, this reasoning made the individualized assessment plainly evident.  Abreu repeatedly and for a long period of time played a major role in a drug trafficking operation.  He engaged in this criminal conduct rather than maintaining full-time, lawful employment.  He also struggled with drug addiction and alcoholism.  These facts were all discussed at Abreu's sentencing and are all found throughout the record.[2]  And they make the reasonable relation between the statutory factors governing special conditions and those imposed in Abreu's sentence obvious.

---

[2] They are, for instance, discussed extensively in the PSR. Along with his counsel, Abreu reviewed the PSR in its entirety and did not object to it.

The first special condition, requiring submission to searches of property based on reasonable suspicion of violations of release conditions or other unlawful conduct, was justified by Abreu's history of drug trafficking. The second condition, requiring participation in an outpatient drug program, is clearly based on Abreu's history of substance abuse, which continued until his arrest. In fact, the Sentencing Guidelines state that this condition is appropriate "[i]f the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol." U.S.S.G. § 5D1.3(d)(4). The condition requiring full-time employment arises from Abreu's long-time involvement in illegal trafficking, his corresponding lack of or under-participation in lawful employment, and his representation that full-time employment was available to him upon release from prison. The requirement that Abreu provide the Probation Department access to his financial information is justified by the defendant's significant drug trafficking history, the substantial risk of recidivism, and the need to monitor his engagement with full-time legitimate employment. Finally, the condition that Abreu be supervised by his district of residence is presumably uncontroversial and serves the convenience of the Probation Department and the defendant.

These unremarkable conditions bear little resemblance to the more unusual or onerous conditions for which the Second Circuit has required a particularly exacting and specific justification stated at length.  See, e.g., United States v. Betts, 886 F.3d 198, 202-03 (2d Cir. 2018) (prohibition on all alcohol use, where there was no evidence the defendant ever seriously abused alcohol or that his underlying crime involved it); Sims, 92 F.4th at 120, 129 (prohibition on association with any "member, associate or prospect" of any criminal organization, where neither the underlying offense nor the defendant's criminal history involved gang or organized criminal activity).

Moreover, nothing in the record suggests that Abreu found these special conditions objectionable.  After the special conditions were articulated and before finally imposing sentence, the Court inquired whether there was any reason the Court could not impose the sentence it had just described.  Abreu's counsel had no objection.  Nor did Abreu's habeas petition contain any objection to any of these conditions of supervised release.  According to Abreu's recent affidavit, he was primarily if not exclusively concerned with the term of incarceration in his sentence, and reasonably so.

Abreu has not met his burden to show that a rational defendant would have wanted to appeal in these circumstances. Abreu's briefing in support of his petition does not even purport to identify any special condition that Abreu or any rational defendant would have wanted to appeal, except as next discussed.

### ii.  Employment Requirement

The only condition that Abreu identifies as providing the basis for a challenge is the special condition requiring him to "seek and maintain full-time employment."  Abreu submits that this condition created a conflict with one of the standard conditions of supervision included in Abreu's sentence, requiring him to "work full time (at least 30 hours per week) at a lawful type of employment."  He speculates that these conditions might create a situation where he is working more than 30 hours but fewer than 35 to 40 hours (one definition of "full-time employment") and believe himself to be compliant, while the Probation Department deems him in violation of the conditions.

There is no necessary conflict here.  The Judgment lists the standard conditions of supervision before it lists the special conditions.  Therefore, the term "full-time" employment had already been defined in the Judgment and would in the normal

20

course be applied to the special condition addressed to employment. If Abreu finds himself unsure about what sort of employment he must obtain once he begins supervision, he can ask his Probation Officer. If his uncertainty persists, he or the Probation Officer may seek clarification from the Court. The aim of supervision is to protect the public safety and support the defendant in a successful and lawful reentry into his community. Abreu does not suggest that full-time employment is not relevant to those goals. Indeed, he argued as much in his sentencing submission.

As relevant to his petition, Abreu cites no authority suggesting that the special employment condition created any basis for a successful appeal. His counsel was certainly under no constitutionally imposed duty to consult with him about his right to appeal on this basis.

B.   Abreu's Arguments

Abreu makes two primary arguments in his submissions of September 20 and October 14, both unavailing. First, he posits that "counsel falsely told Abreu that he had no right to appeal the court's acceptance of Abreu's guilty plea and the propriety of conditions of supervised release." Abreu frames such a statement as functionally similar to telling him he had no right to appeal at all, which would satisfy the deficiency and

21

prejudice prongs of Strickland.  But this argument misstates the record.  As discussed in the August 29 Opinion, there is no evidence that Abreu's counsel affirmatively told him he could not challenge either the acceptance of his plea or the conditions of supervised release.[3]  Neither Abreu nor his trial counsel asserts that that was ever said.  At issue here is whether Abreu's counsel had a constitutionally imposed duty to consult with him about those bases for appeal, which for the reasons explained above he did not.

Relatedly, Abreu has failed to show that Strickland's prejudice prong has been satisfied.  Abreu cannot demonstrate that he was prejudiced because, as this Opinion explains, he had no nonfrivolous grounds for appeal.  See Flores-Ortega, 528 U.S. at 485-86 (noting that both Strickland prongs may depend on the presence of nonfrivolous grounds for appeal).

Abreu's second argument is that, even though he never told his counsel to file a notice of appeal, it was "unreasonable" for his attorney not to file an appeal on his behalf because Abreu was sentenced to a lengthy term of imprisonment at the

---

[3] Abreu's trial counsel says he advised Abreu of his right to appeal based on the ineffective assistance of counsel.  That advice was correct.

high end of the stipulated Guidelines range.[4]  This argument
implies the sort of rule that the Supreme Court explicitly
rejected in Flores-Ortega, 528 U.S. at 480 (declining to "impose
an 'almost' bright-line rule and hold that counsel 'almost
always' has a duty to consult with a defendant about an appeal"
(citation omitted)).  The relevant question is whether a
"rational defendant would want to appeal."[5]  Id.

Abreu points to his lengthy term of incarceration as reason
for any "reasonable counsel" to file notice of appeal.  But that
term fell within the range that Abreu knowingly and voluntarily
agreed applied in his case and could not be challenged.  And,
during his plea allocution, Abreu told the Court that he
understood that his attorney's prediction of his sentence could
be wrong and that no one could give him any assurance of what
sentence the Court would decide to impose after it reviewed the
record and considered the § 3553(a) factors.  Abreu attests that
he was extremely disappointed with the term of imprisonment to
which he was ultimately sentenced, but the grounds for appeal he

---

[4] Abreu notes there is a factual dispute regarding whether
Abreu's trial counsel consulted with him regarding his right to
appeal after sentencing.  But that dispute is material only if
counsel had a duty to consult with him about an appeal, which he
did not.

[5] That is, assuming the defendant did not "reasonably
demonstrate[] to counsel that he was interested in appealing,"
Flores-Ortega, 528 U.S. at 480, which is undisputed here.

proposes, discussed above, would have done nothing to reduce that term even if they were nonfrivolous. Abreu has not identified any nonfrivolous grounds for appeal that would meet the Supreme Court's standard for counsel's constitutional duty to consult him regarding his right to appeal.

### Conclusion

Abreu's November 29, 2021 petition for a writ of habeas corpus is denied. The defendant having not made a substantial showing of a denial of a federal right, a certificate of appealability shall not be granted. Hoffler v. Bezio, 726 F.3d 144, 154 (2d Cir. 2013); Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriguez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962).

Dated:     New York, New York
           October 28, 2024

                                        DENISE COTE
                                United States District Judge

24